**WO**                    NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Weissmueller, *et al.*, | No. CV-14-02802-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Breg Incorporated, *et al.*, | |
| Defendants. | |

At issue is Defendant Breg, Incorporated's Motion for Summary Judgment Under the Statute of Limitations (Doc. 53, MSJ), to which Plaintiffs Thomas Weissmueller and Cynthia Weissmueller filed a Response (Doc. 58, Resp.) and Defendant filed a Reply (Doc. 59, Reply). The Court heard oral argument on the Motion on June 27, 2016. (Doc. 62.) For the reasons that follow, the Court finds that Plaintiffs have shown there is a genuine issue of material fact as to the discovery of their claim and Defendant is not entitled to judgment as a matter of law. The Court therefore denies Defendant's Motion for Summary Judgment.

**I.   BACKGROUND**

Plaintiffs Thomas and Cynthia Weissmueller brought this case following a shoulder surgery that Mr. Weissmueller underwent in 2006 in which the operating surgeon used a medical device known as a pain pump to administer pain medication following the surgery. Plaintiffs allege that the pain pump caused permanent injury to Mr. Weissmueller's shoulder. A product identification label that Plaintiffs uncovered in discovery in 2012 shows that Defendant Breg is the manufacturer of the pain pump. The

sole issue before the Court is whether Plaintiffs' claims are barred under the statute of limitations.

### A. Mr. Weissmueller's Surgeries

The following facts are undisputed unless otherwise indicated. Dr. David Bailie performed two shoulder surgeries on Mr. Weissmueller—one on November 7, 2005, and the other on March 27, 2006—in which he used a pain pump. (Doc. 54, Defendant Breg, Inc.'s Statement of Facts In Support of Its Motion for Summary Judgment (DSOF), Ex. 1, Deposition of David Bailie, M.D. (Bailie Dep.) at 9:1-8, 20:22-21:1.) The pain pump used in the March 27, 2006 surgery gave rise to this lawsuit. After that surgery, Mr. Weissmueller suffered from such intense pain that his right arm was essentially useless. (Doc. 58, Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (PSOF), Ex. 4, Deposition of Thomas Weissmueller (Weissmueller Dep.) at 147:9-24, 173:21-25.)

For both surgeries, there was conflicting evidence about whether Dr. Bailie used a pain pump manufactured by I-Flow, Incorporated or one manufactured by Breg. Dr. Bailie's operative report for the November 7, 2005 surgery indicated he used a Breg pain pump, and the nursing record contained a product identification sticker for the Pain Care 3200, which is manufactured by Breg. (Bailie Dep. at 20:7-12; DSOF, Ex. 2, Nov. 7, 2005 Nursing Record.) However, a billing letter from Dr. Bailie's office dated December 5, 2005 and addressed "To Whom It May Concern" stated that he used an ON-Q Pain Pump, which is manufactured by I-Flow. (Bailie Dep. at 6:15-23, 8:15-19; DSOF, Ex. 4, Dec. 5, 2005 Letter.)

Dr. Bailie's operative report for the March 27, 2006 surgery also indicated he used a Breg pain pump. (Bailie Dep. at 9:19-10:24; DSOF, Ex. 7, March 27, 2006 Operative Report.) Unlike in the first surgery, the nursing record from this surgery did not contain a product identification sticker. (DSOF, Ex. 5, Mar. 27, 2006 Nursing Record.) A billing letter from Dr. Bailie's office dated April 5, 2006 and addressed "To Whom It May Concern" stated that he used an I-Flow ON-Q Pain Pump. (Bailie Dep. 7:9-13, 8:20-24;

2

DSOF, Ex. 8, April 5, 2006 Letter.)

### B. Plaintiffs' Investigation and Lawsuits Against I-Flow

In 2008, Plaintiffs retained the law firm Wagstaff & Cartmell LLP to represent them in their lawsuit for the injuries arising from Mr. Weissmueller's March 27, 2006 surgery. (PSOF, Ex. 1, Affidavit of Jeffrey M. Kuntz, Esq. (Kuntz Aff.) ¶ 6; PSOF, Ex. 5, Thomas P. Cartmell Affidavit (Cartmell Aff.) ¶ 6.) Thomas P. Cartmell and Jeffrey M. Kuntz acted as primary counsel. (Kuntz Aff. ¶ 6.)

Mr. Kuntz testified that he reviewed the operative report and the billing letter from Mr. Weissmueller's March 27, 2006 surgery and found that they conflicted on the issue of whether I-Flow or Breg manufactured the pain pump used in the surgery. (Kuntz Aff. ¶ 7.) Subsequently, he stated that he "carefully searched all of the . . . records from the hospital . . . and from the surgeon . . . for additional information identifying the manufacturer" but was unable to find any information. (Kuntz Aff. ¶ 8.) Mr. Kuntz and Mr. Cartmell stated that "[b]ecause it was impossible that both companies manufactured the pump, we did not feel it was proper to sue both manufacturers." (Kuntz Aff. ¶ 8; Cartmell Aff. ¶ 8.) Instead, they testified that "[t]hey decided that the best course of action was to speak directly to Dr. Bailie." (Kuntz Aff. ¶ 9; Cartmell Aff. ¶ 9.) Mr. Kuntz flew to Arizona to meet with Dr. Bailie to discuss which pain pump was used, and Dr. Bailie "had no hesitation when telling [Mr. Kuntz] that it had to have been an I-Flow pump" and that he "had stopped using Breg pumps by the date of that surgery." (Kuntz Aff. ¶ 10.)

Mr. Kuntz and Mr. Cartmell testified that they concluded, based on the evidence they had gathered, that Dr. Bailie had used an I-Flow pain pump in the surgery. (Kuntz Aff. ¶ 12; Cartmell Aff. ¶ 11.) They also stated that they "believed that filing suit against Breg would be an ethical violation, as well as a violation of . . . Section 128.7 of the [California] Code of Civil Procedure, or Rule 11 of the Federal Rules of Civil Procedure." (Kuntz Aff. ¶ 13; Cartmell Aff. ¶ 12.) On August 22, 2008, Plaintiffs filed their first lawsuit, in California state court, against I-Flow and sixteen other defendants.

3

1  (DSOF, Ex. 10, August 22, 2008 Compl.) They did not name Breg as a defendant. (*Id*.)
2  Plaintiffs voluntarily dismissed the lawsuit on February 18, 2010. (DSOF, Ex. 11, Feb.
3  18, 2010 Voluntary Dismissal.) On February 23, 2010, Plaintiffs filed their second
4  lawsuit, in Arizona federal district court, against I-Flow and two other defendants.
5  (DSOF, Ex. 12, Feb. 23, 2010 Compl.) Again, they did not name Breg as a defendant.
6  (*Id*.) Mr. Kuntz and Mr. Cartwell testified that they were "convinced we sued the right
7  party" because I-Flow did not immediately raise the issue of product identification.
8  (Kuntz Aff. ¶ 16-17; Cartmell Aff. ¶ 16-17.)

### C. Dr. Bailie's Deposition

In January 2011, I-Flow requested the deposition of Dr. Bailie on the issue of product identification. (DSOF, Ex. 13, January 2011 Emails.) During Dr. Bailie's deposition on February 11, 2011, he testified that he did not remember which pain pump he used in Mr. Weissmueller's surgeries. (Bailie Dep. at 13:5-8.) He stated that the billing letter sent by his office after the surgeries was "a form letter that is not dictated by case," and that his operative reports are generally more accurate than these billing letters. (Bailie Dep. at 7:1-2, 12:22-13:16.) He testified that the only billing letter his office had ever sent for a pain pump was the I-Flow letter, which was provided by I-Flow. (Bailie Dep. at 11:24-12:13.)

Dr. Bailie also testified that he switched from Breg to I-Flow "sometime in 2005" and did not recall using Breg pain pumps in March 2006. (Bailie Dep. at 21:24-22:5, 22:19-21.) However, he stated that, after 2005, if no I-Flow pain pumps were available at the surgical facility, he would have used a Breg pain pump. (Bailie Dep. at 24:5-15.) Finally, he testified that "the nursing record where they put the [product identification] sticker" would be the most reliable source of data, but no such sticker appeared in the nursing records from Mr. Weissmueller's 2006 surgery. (Bailie Dep. at 13:9-24, 17:6-20.)

Mr. Kuntz stated that Dr. Bailie's "deposition did not change my belief that I-Flow had manufactured the pain pump used in the March 2006 surgery." (Kuntz Aff. ¶ 19.)

4

### D. Elite Care Records

In 2010, I-Flow hired Litigation Management, Inc. (LMI) to collect Mr. Weissmueller's medical records and store them in an electronic database. (DSOF, Ex. 14, Deposition of Angela Browning (Browning Dep.) at 116:10-14.) On November 24, 2010, LMI created accounts for several employees at Plaintiffs' law firm so they could download the records. (Browning Dep. at 116:18-22.) In July 2011, the employees at Plaintiffs' law firm had access through the database to Mr. Weissmueller's records from Elite Care. (Browning Dep. at 120:10-25.) The Elite Care records contained the Paincare 3200 product identification sticker from the pain pump used in Mr. Weissmueller's 2006 surgery, which showed that Breg was the manufacturer. (DSOF, Ex. 17, Elite Care Records.) The Elite Care records were available to Plaintiffs' law firm from July 2011 until February 2012, but the firm did not download them. (Browning Dep. at 121:7-122:9.)

Mr. Kuntz testified that he and a paralegal at his firm discussed which records from the LMI database might have relevant information for Mr. Weissmueller's case. (Kuntz Aff. ¶ 21.) The database contained 145 records from multiple providers, and the firm had to pay $30 per download. (PSOF, Ex. 10 Medical Order Transaction Report; PSOF, Ex. 12, LMI Weissmueller Records.) The firm downloaded several records but not the Elite Care records. (PSOF, Ex. 11, Chart of Plaintiffs' Downloads.) On April 23, 2012, I-Flow's counsel informed Plaintiffs' counsel that the Elite Care records contained the Breg product identification sticker. (DSOF, Ex. 23, April 23, 2012 Email from McLaughlin to Kuntz.) Shortly thereafter, Plaintiffs stipulated to dismiss the action against I-Flow. (DSOF, Ex. 24, May 23, 2012 Stip. to Dismiss With Prejudice.)

### E. Plaintiffs' Lawsuits Against Breg

On December 4, 2012, Plaintiffs filed their third lawsuit, this time back in California state court, and named Breg as a defendant for the first time. (DSOF, Ex. 25, December 4, 2012 Compl.) Mr. Weissmueller's case against Breg was part of a consolidation of cases, and Plaintiffs' attorneys traveled to California for status

conferences and participated in two court-ordered mediations. (Kuntz Aff. ¶ 25; Cartmell Aff. ¶ 22.) The case did not settle, and on August 5, 2013, Plaintiffs stipulated to voluntarily dismiss the action. (DSOF, Ex. 26, August 5, 2013 Request for Dismissal; Kuntz Aff. ¶ 25; Cartmell Aff. ¶ 22.) The California court's order of dismissal of Plaintiffs' claim against Breg is dated November 4, 2013. (DSOF, Ex. 26, Nov. 4, 2013 Order of Dismissal.)

Plaintiffs filed the present lawsuit, their fourth, on March 28, 2014, in Arizona state court and named Breg and Dr. Bailie as Defendants. (DSOF, Ex. 6, March 28, 2014 Compl.) When Plaintiffs moved to voluntarily dismiss Dr. Bailie without prejudice, the dismissal created complete diversity between the parties, and Breg removed the action to this Court. (Doc. 1-3 at 73-74, Mot. to Dismiss Dr. Bailie; Doc. 1, Notice of Removal.) Before Breg removed the action, the state court denied Breg's motion to dismiss on statute of limitations grounds, concluding that a jury question exists as to the date of accrual. (Doc. 1 at 238, Arizona Superior Court Minute Entry.)

This Court set a bifurcated discovery schedule (Doc. 43), allowing the parties to initially conduct discovery and file dispositive motions as to the statute of limitations. Breg now moves for summary judgment on statute of limitations grounds.

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

6

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289.  However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact.  *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

**III.   ANALYSIS**

Plaintiffs' Complaint alleges that the pain pump used in Mr. Weissmueller's 2006 surgery caused "the destruction of and chondrolysis in his right shoulder." (March 28, 2014 Compl. ¶ 26.) The Complaint also alleges that Plaintiffs' counsel initially filed a lawsuit against I-Flow based on Dr. Bailie's representation that he believed he used an I-Flow pain pump in the surgery. (March 28, 2014 Compl. ¶ 36.) The Complaint alleges that after nearly four years of litigation, Plaintiffs' counsel received the Elite Care records that contained the product identification sticker indicating that the pain pump was in fact manufactured by Breg. (March 28, 2014 Compl. ¶ 38.)

**A.    The Discovery Rule**

Defendant asserts that Plaintiffs' cause of action accrued as of 2008, when Mr. Weissmueller realized he had been injured by the pain pump used in his 2006 surgery, and, because Plaintiffs did not file this lawsuit until March 28, 2014, the claim is barred under the statute of limitations. (MSJ at 7-8.) Plaintiffs argue that the discovery rule

should be applied to toll the statute of limitations. (Resp. at 4.) They contend that they have not slept on their rights, but rather have engaged in litigation for over six years. (Resp. at 8.) They further contend that their cause of action accrued on April 23, 2012, when Plaintiffs' counsel first viewed the product identification sticker from Mr. Weissmueller's surgery. (Resp. at 5.) Alternatively, Plaintiffs argue that there is a genuine dispute of fact as to whether their claims accrued before April 23, 2012. (Resp. at 7.)

Under Arizona law, a personal injury, product liability action must be "commenced and prosecuted within two years after the cause of action accrues." A.R.S. § 12-542(1). In a case where the "complaint shows on its face that the cause of action is barred by the statute of limitations, the burden is on the plaintiff to show the statute should be tolled." *Ulibarri v. Gersentberger*, 871 P.2d 698, 702 (Ariz. Ct. App. 1993) (citing *Cooney v. Phoenix Newspapers, Inc.*, 770 P.2d 1185, 1187 (Ariz. Ct. App. 1989)). The "discovery rule" can be applied to toll the accrual of an action where the "injury or the act causing the injury, or both, have been difficult for the plaintiff to detect." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 967 (Ariz. 1995) (quoting *April Enters. V. KTTV*, 195 Cal. Rptr. 421, 436 (Ct. App. 1983)). Under the discovery rule, "a cause of action 'accrues' when the plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by a *particular* defendant's conduct." *Lawhon v. L.B.J. Institutional Supply, Inc.*, 765 P.2d 1003, 1007 (Ariz. Ct. App. 1988) (emphasis in original).

The parties disagree as to whether the test for the discovery rule is subjective or objective. (Resp. at 4; Reply at 4-5.) Plaintiffs rely on *Walk v. Ring* and *Doe v. Roe* for the proposition that "[a] plaintiff has no duty to file a complaint based on information she subjectively believed to be false or unbelievable at the time." *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002) (citing *Doe v. Roe*, 995 P.2d 951, 962 (Ariz. 1998)). To the extent that subjectivity plays a role in the discovery rule test, these cases are distinguishable from the instant one because they involve the plaintiff's beliefs and awareness as to whether the

8

facts underlying a cause of action even existed. *Walk*, 44 P.3d at 990 (patient aware she had been injured during course of physician's treatment but unaware that injury was attributable to physician's fault or neglect); *Doe*, 955 P.2d at 995-96 (plaintiff allegedly unaware of injury until her repressed memories of being sexually abused as a child began to surface during adulthood). In this case, Mr. Weissmueller was aware that he was injured and believed that the manufacturer of the pain pump used in his 2006 shoulder surgery—either I-Flow or Breg—was liable for the injury. The dispute, instead, is over when a reasonable plaintiff should have discovered that Breg was the proper Defendant.

The issue of whether Plaintiffs acted with "reasonable diligence" in discovering that they had been injured by Breg's conduct necessarily depends on the specific facts and circumstances of the case. The circumstances in *Lawhon* are similar to this case. 765 P.2d at 1004. There, the plaintiff knew the *cause* of injury but not the *identity* of the defendant whose product allegedly caused the injury. *Id*. Specifically, the plaintiff knew that a sulfite product her husband ingested at a restaurant caused his death, but the restaurant did not know which of two companies had distributed the product. *Id*. The plaintiff's counsel filed a lawsuit against the wrong distributor based on information obtained through informal conversations and correspondence. *Id*. Several years later, the plaintiff's counsel received information from a Food and Drug Administration report and depositions indicating that L.B.J. Institutional Supply, Inc. was the potentially liable distributor. *Id*. The plaintiff's attorney subpoenaed L.B.J.'s records, which revealed that it was the correct defendant for the lawsuit. *Id*. at 1004-05. The court held that the question of when the plaintiff "knew or with the exercise of reasonable diligence could have known" the identity of the correct defendant was a factual issue. *Id*.

Plaintiffs' case has many factual similarities to *Lawhon*. The immediately available evidence suggested that one of two companies manufactured the product that caused Mr. Weissmueller's injury. Plaintiffs' counsel filed a lawsuit against the wrong company largely based on information obtained through informal conversations. In addition, there were records available—in *Lawhon*, L.B.J.'s business records, and in this

case, the product identification sticker in the Elite Care records—that would have definitively identified the correct defendant, but plaintiffs' counsel failed to obtain this information until the statute of limitations period had run. Unlike in *Lawhon*, Plaintiffs' counsel here had written evidence from the day the injury occurred—the operative report—that pointed to the correct Defendant. However, other written evidence—the billing letter—indicated that an I-Flow pump was used. Despite this difference, this case is substantially similar to *Lawhon* in that it is factually complex and the question of reasonableness is a close one. This weighs in favor of finding that the question of whether Plaintiff "knew or with the exercise of reasonable diligence could have known" the identity of the correct defendant is a factual issue for a jury. *See Lawhon*, 765 P.2d at 1004-05.

Defendant, nonetheless, contends that this case should be decided as a matter of law "because the undisputed facts show that [P]laintiffs knew or should have known that Breg was the manufacturer before March 28, 2012," and that, in any event, Plaintiffs could have sued both manufacturers in the alternative under Arizona law, but failed to do so. (MSJ at 9; Reply at 6-7.) Defendant cites *Braxton-Secret v. A.H. Robins Co.* for the proposition that "questions involving a person's state of mind" are generally factual issues, but "where the palpable facts are substantially undisputed," such issues can be decided as a matter of law. 769 F.2d 528, 531 (9th Cir. 1985) (applying California substantive law). Defendant omits the subsequent sentence in the *Braxton-Secret* opinion, which states that "summary judgment should not be granted where contradictory inferences may be drawn from such facts, even if undisputed." *Id*. Even if the Court assumes that the facts here are "substantially undisputed," contradictory inferences could be drawn from those facts about what Plaintiffs knew or should have known. For example, the parties disagree about what effect Dr. Bailie's deposition testimony had on Plaintiffs' knowledge. (MSJ at 11-12; Resp. at 12-13; Reply at 9.)

Given these circumstances, Plaintiffs have established a genuine issue of material fact because the evidence would allow a reasonable jury to determine that it was

reasonable for Plaintiffs not to have discovered the proper Defendant until either the product identification sticker was available to them, in 2011, or they actually uncovered it, in 2012.

## B. The Savings Statute

If a jury concludes that a reasonable plaintiff would have discovered the proper defendant only when Plaintiffs actually uncovered the Breg product identification label, in April 2012, then the present action, filed in March 2014, was timely. If a jury concludes that a reasonable plaintiff would have discovered the proper defendant when Dr. Bailie was deposed, in February 2011, or when the Breg product identification label was available to Plaintiffs, in July 2011, then the present action is untimely on the face of the Complaint, but Plaintiffs' third lawsuit, filed against Breg in California in December 2012, was timely[1].

In that instance, Plaintiffs urge the Court to exercise its discretion to apply the Arizona savings statute so that December 4, 2012, the date Plaintiffs filed their claim against Breg in California state court, becomes the date of reference for applying the statute of limitations. (Resp. at 5.) Under the savings statute, "[i]f an action timely commenced is terminated by . . . voluntary dismissal," the Court has discretion to "provide a period for commencement of a new action for the same cause, although the time otherwise limited for commencement has expired." A.R.S. § 12-504. The second action must be filed no more than six months from the date of termination. *Id*. When determining whether to allow a plaintiff to refile under the savings statute, a court "should ascertain whether the plaintiff acted reasonably and in good faith, whether he prosecuted his case diligently and vigorously, whether a procedural impediment exists which affects his ability to [refile], and whether each party will be substantially prejudiced." *Flynn v. Cornoyer-Hedrick Architects & Planners, Inc.*, 772 P.2d 10, 15

---

[1] If a jury concludes that a reasonable plaintiff would have discovered the proper defendant prior to December 2010—for example, based on the 2006 operative report—then this action is time barred.

11

1 (Ariz. Ct. App. 1988).

2 The California court's order of dismissal of Plaintiffs' claim against Breg is dated November 4, 2013. (Nov. 4, 2013 Order of Dismissal) As required for the savings statute to apply, Plaintiffs filed the present lawsuit within six months of that date—on March 28, 2014—in Arizona state court. (March 28, 2014 Compl.)

Plaintiffs assert that they "made all court-imposed deadlines and participated in good faith in two separate mediations" in their California state court case against Breg. (Resp. at 6.) They also contend that they performed "substantial work" for the mediations and "did what they could to move the litigation forward and tried to achieve a settlement." (Resp. at 6.) Plaintiffs state that after they failed to reach a settlement in California, they refiled in Arizona and added Dr. Bailie as a Defendant. (Resp. at 6.) They argue that the Court should apply the savings statute because they "were diligently pursuing their claims in good faith." (Resp. at 6.)

Defendant argues that the Court should not apply the savings statute because Plaintiffs "did not act reasonably in filing, dismissing, and refiling suit against Breg." (Reply at 2.) Defendant contends that Plaintiffs decided to refile in Arizona because "their California action was itself untimely under California law," and they "hoped they would fare better in Arizona." (Reply at 2.) Defendant urges the Court not to use the savings statute "to facilitate such blatant forum shopping." (Reply at 2.)

Defendant admits that Plaintiffs were facing a procedural impediment—the statute of limitations. However, Defendant argues that Plaintiffs did not act reasonably or in good faith in pursuing their claim against Breg, and therefore the savings statute should not apply. Defendant presents no evidence to support this allegation. Rather, Defendant asks the Court to infer that Plaintiffs were forum shopping, and therefore acting in bad faith, when they refiled a similar claim against Breg in Arizona after voluntarily dismissing their claim in California. The Court declines to make an inference that Plaintiffs acted unreasonably or in bad faith based only on these facts. In addition, Defendant produces no evidence that Plaintiffs did not prosecute their case diligently.

Finally, Defendant does not show that it will be substantially prejudiced if the Court decides to apply the savings statute, other than by having to defend itself in this litigation. Consequently, the Court will apply the savings statute. At trial, Plaintiffs must prove that their cause of action accrued after December 4, 2010.

For the foregoing reasons,

IT IS ORDERED denying Defendant's Motion for Summary Judgment Under the Statute of Limitations (Doc. 53).

Dated this 20th day of July, 2016.

Honorable John J. Tuchi
United States District Judge